**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **BORROWMONEY.COM, INC.** and **ALDO PISCITELLO,** | : |
| | : |
| **Defendants.** | : |
| _____ | : |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## I.
## INTRODUCTION

1.      The Commission brings this action to enjoin BorrowMoney.com, Inc., ("**BorrowMoney**"), a South Florida-based publicly traded company, and its sole officer entitled with all executive positions, as well as its majority shareholder, Aldo Piscitello, (collectively "**Defendants**") for violations of the anti-fraud, issuer reporting, and beneficial stock ownership reporting provisions of the federal securities laws.

2.      BorrowMoney purports to provide an internet-based platform to match mortgage and loan providers with prospective borrowers, earning revenue by supplying leads of prospective customers to those lenders.  BorrowMoney's common stock began trading on the over-the counter ("**OTC**") Pink Market with a ticker symbol of "BWMY" on October 29, 2019, and its registration

of its common stock became effective on June 11, 2020.  Its stock continues to be traded on the OTC.

3.     BorrowMoney's fiscal year runs from September 1st through August 31st.  In Forms 10-Q filed with the Commission, for each of its first three reporting periods for its fiscal year ending on August 31, 2019—the quarterly reports ended on November 30, 2018, February 28, 2019 and May 31, 2019 (**"FY 2019 Quarterly Reports"**)— BorrowMoney represented that its revenue was related to lead generation.  However, BorrowMoney's purported revenue was a figment of Piscitello's imagination and invention.  Although BorrowMoney reported revenue in the FY 2019 Quarterly Reports as signed by Piscitello, he knew the majority of the revenue reported was fictitious and, for the remainder, BorrowMoney did not have contracts or events that met the criteria for revenue recognition required by U.S. generally accepted accounting principles (**"GAAP"**).

4.     In further misleading the investing public, BorrowMoney purportedly "came clean" that its revenue was entirely overstated in a November 15, 2019 Form 8-K (**"November 2019 8-K"**) announcing the resignation of its auditor and indicating that its auditors believed that BorrowMoney's FY 2019 Quarterly Reports were materially misstated by revenue being overstated and loans from related parties being understated.  However, BorrowMoney, through Piscitello, in disclosing the resignation of its auditor, and acknowledging that it was Piscitello himself who contributed to BorrowMoney's purported revenue, failed to disclose its improper revenue recognition was not due to misclassifications as stated in the November 2019 8-K, but rather that it should not have disclosed revenue *at all* for any of the FY 2019 Quarterly Reports.  To date, BorrowMoney has made no corrective disclosures to clarify that the revenues reported in the first three quarters of fiscal year ended 2019 (**"FY 2019"**) were not simply misclassified as

stated in the November 2019 8-K, but instead, were fictitious or did not meet the criteria for revenue recognition.

5.      Further, once BorrowMoney's registration of its common stock became effective on June 11, 2020, Piscitello was required to file a Form 3 indicating his beneficial ownership of approximately 20 million shares of BorrowMoney's common stock.  He never filed the required Form 3.

6.      Piscitello also failed to make required disclosures on Form 4 or Form 5 related to changes in his beneficial ownership of BorrowMoney's common stock.  Between August 2020 and February 2023, Piscitello failed to report on any filing with the Commission changes in his beneficial ownership of BorrowMoney's common stock as a result of 99 transactions in brokerage accounts he either solely owned or owned jointly.  Piscitello made profits of approximately $37,900 from sales of BorrowMoney's common stock between August 2020 and June 2022 in these accounts.  Piscitello also failed to disclose his acquisition of 3,319,527 shares of BorrowMoney stock on or about March 15, 2023 on any filing with the Commission as required.

7.      In addition, Piscitello failed to make required filings on Schedules 13D or 13G, which require disclosures of beneficial ownership and acquisition of equity securities.  Piscitello has been (and remains) a greater than 5% beneficial owner since the effectiveness of BorrowMoney's registration under Section 12 of the Securities Exchange Act of 1934 (**"Exchange Act"**), at all times owning at least 89.6% of BorrowMoney's common stock.  Further, on May 16, 2022, Piscitello acquired more than 2% of BorrowMoney's outstanding shares in a 12-month period when he received a transfer of BorrowMoney stock into a brokerage account he jointly owned.  Despite his beneficial ownership and acquisition, Piscitello has never filed any required statements on Schedules 13D or 13G.

8.      BorrowMoney never reported Piscitello's failure to file the required beneficial stock ownership Forms 3, 4 and/or 5.

9.      In a span of five years, BorrowMoney had four independent audit firms resign, and though a publicly traded company, it does not currently have an independent audit firm in its employ.

10.      As a result of the conduct alleged in this Complaint, BorrowMoney has violated Section 17(a) of the Securities Act of 1933 (**"Securities Act"**) [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule l0b-5 thereunder [17 C.F.R. § 240.10b-5]; and Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1].

11.      As a result of the conduct alleged in this Complaint, Piscitello has violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule l0b-5 thereunder [17 C.F.R. § 240.10b-5]; Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)], and Rule 16a-3 thereunder [17 C.F.R. § 240.16a-3]; Sections 13(d) and 13(g) of the Exchange Act [15 U.S.C. §§ 78m(d) and 78m(g)], and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1]; and has aided and abetted BorrowMoney's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1].

12.      Unless restrained and enjoined, Defendants will continue to violate the federal securities laws. Among other relief, the Commission seeks permanent injunctions consistent with *SEC v. Goble,* 682 F.3d 934 (11th Cir. 2012), disgorgement of ill-gotten gains with prejudgment interest, and civil monetary penalties as to Defendants.  The Commission also seeks an order against Piscitello imposing an officer and director bar and a penny stock bar.  The Commission further seeks any other relief that may be necessary and appropriate.

## II.
## DEFENDANTS

13.     **BorrowMoney** is a Florida corporation with a principal place of business in Fort Lauderdale, Florida.  BorrowMoney's common stock began trading on the OTC Pink Market as "BWMY" on October 29, 2019.  BorrowMoney's common stock was registered under Section 12(g) of the Exchange Act on June 11, 2020.  Its stock is a "penny stock" because its stock is an equity security that does not meet any of the exceptions from the definition of a penny stock contained in Exchange Act Section 3(a)(51) and Rule 3a51-1. BorrowMoney had net tangible assets and average revenue below the thresholds of Rules 3a51-1(g)(1) and (2), its securities were not a National Market System Security stock, as defined in 17 C.F.R. § 242.600(b)(55), and its securities traded below five dollars per share at all times.

14.     **Piscitello**, 72, resides in Fort Lauderdale, Florida.  Piscitello is BorrowMoney's founder, majority shareholder, and sole officer, including its President, Chief Executive Officer (**"CEO"**), Chief Financial Officer, Principal Executive Officer, Principal Financial Officer, and Chairman of the Board of Directors.

## III.
## OTHER RELEVANT PERSONS AND ENTITIES

15.     **JTS88 Limited Liability Company ("JTS88")** is a New York, limited liability company formed in November 2021.  JTS88's principal place of business is Piscitello's residence in Fort Lauderdale, Florida.  Piscitello has always been an authorized signatory on all JTS88 bank accounts and the primary source of funds into and recipient of funds from those collective bank accounts.  By at least July 29, 2022, Piscitello was a member of member managed JTS88.

16.     **Consulting Firm** is a Texas consulting firm that provides accounting and financial reporting services to public and private companies.  Between July 2018 and in or about June 2020,

Consulting Firm helped BorrowMoney coordinate with its auditors, assemble the company's financial statements and Forms 10-Q and 10-K filed with the Commission based upon information provided by BorrowMoney, as well as providing some bookkeeping services.

17.     **Audit Firm #1** is a Public Company Accounting Oversight Board (**"PCAOB"**)-registered public accounting firm headquartered in Houston, Texas.   Audit Firm #1 served as BorrowMoney's auditor between 2015 and November 8, 2019, when Audit Firm #1  resigned due to an inability to rely on evidence obtained for revenue testing of BorrowMoney's FY 2019.

18.     **Audit Firm #2** was a PCAOB-registered public accounting firm, and was headquartered in Cornelius, North Carolina.   After engaging Audit Firm #2 as its auditor on December 4, 2019, BorrowMoney amended its FY 2019 quarterly filings on January 7, 2020 and restated its financial statements for the first three quarters of 2019.   Audit Firm #2 resigned as BorrowMoney's auditor on January 26, 2021.   Audit Firm #2's PCAOB registration was withdrawn on June 10, 2024.

19.     **Relative**, age 37, resides in Merrick, New York and works as an ironworker. Piscitello jointly owned a brokerage account with Relative.

### IV.
### JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)]; and Sections 20(e), 21(d), 21(e) and 27(a) of the Exchange Act [15 U.S.C. §§ 78t(e), 78u(d), 78u(e), and 78aa(a)].

21.     The Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of Florida because: (a) many of Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in this District; (b) BorrowMoney's principal place of business is in this District; and (c) Piscitello resides in this District.

22.     In connection with the conduct alleged in this Complaint, Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, or the mails.

**V.**
**FACTUAL ALLEGATIONS**

**A.     Background on BorrowMoney**

23.     BorrowMoney provides an internet-based platform to match mortgage and loan providers with prospective borrowers, touting itself on its website as "A Better Way to Borrow." Potential customers can seek to secure loans for a wide array of products, ranging from auto loans, to business loans, to personal loans.

24.     BorrowMoney holds itself out as a "free, no obligation financial services site which provides the resources customers need to make better financial decisions." BorrowMoney offers to provide customers "every conceivable type of loan, insurance, credit card and card product available at competitive rates."

25.     Its home page on its website contains the following:



26.     BorrowMoney also actively solicits investors.  Its website has a dedicated "investors" tab, which leads to an Investors Presentation link.  The presentation indicates that it generates revenue by selling subscription lead packages, pay as you go lead sale, advertising banners, ad placement, and realtors' sale and rental listing services on its website.  BorrowMoney touts its domain name, BorrowMoney.com as giving it a distinct advantage over other online lending competitors.

27.     BorrowMoney's stock continues to be traded on the OTC Pink Market.

**B.     Company and Officer Disclosures**

28.     Reliable, timely and readily accessible information is fundamental for investors and material information is fundamental to an investor's investment decision.

29.     Quarterly period reports on Forms 10-Q and annual Forms 10-K filed by public companies such as BorrowMoney are designed to provide a detailed picture of a company's business, the risks it faces, and the operating and financial results for the fiscal quarter or year, as applicable.  Company management also discusses its perspective on the business results and what is driving them.

30.     The federal securities laws prohibit companies from making materially false or misleading statements.  Likewise, companies are prohibited from omitting material information that is needed to make the disclosures not misleading.  A company's CEO and CFO must certify to the accuracy of the Form 10-K and Form10-Q.

31.     Included in the requirement for these Forms are a company's Financial Statements and Supplementary Data, which requires the company's audited financial statements. This includes the company's income statements, balance sheets, statements of cash flows and statements of stockholder's equity.

32.     U.S. companies are required to present their financial statements according to a set of accounting standards, conventions and rules known as GAAP.  GAAP is a series of authoritative standards set out by policy boards (including the Financial Accounting Standards Board, or **"FASB"**), that standardizes and regulates the definitions, assumptions, and methods used in accounting across industries, and seeks to ensure that a company's financial statements are complete, consistent, and comparable.

33.     FASB's Accounting Standards Codification (**"ASC"**) is the current source of GAAP.  ASC 606 directs entities to recognize revenue when the promised goods or services are transferred to the customer, as specified therein.  BorrowMoney adopted ASC 606 as of the beginning of its first quarter fiscal year 2019.  ASC 606 only permits revenue to be recognized when there is a contract or agreement that meets specified criteria or when a contract does not meet required criteria and an entity receives consideration from the customer, when one or more specified events have occurred.

34.      An independent accountant is required to audit the company's financial statements, and if this auditor is satisfied with the information the company provides, it issues an "unqualified opinion" that the financial statements fairly present the company's financial position in accordance with GAAP.

35.     A separate requirement is disclosure of "Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters," which requires information about the shares of the company owned by the company's directors, officers and certain large shareholders.

36.     Investors who beneficially own more than a certain percentage of a covered class of equity securities must publicly file a Form 3, 4, or 5, and/or a Schedule 13D or a Schedule

13G, as applicable, so that the remainder of the investing public is aware of such levels and changes of beneficial ownership.

37.     In addition to filing annual Form 10-K reports and quarterly Form 10-Q reports, public companies report certain material corporate events on a more current basis.  Form 8-K is the "current report" companies file with the Commission to announce major events that shareholders should know about.

      **C.**     **Fictitious Revenue and Improper Revenue Recognition**

38.     In the FY 2019 Quarterly Reports, BorrowMoney reported revenues related to "lead" generation and made statements in each MD&A section of the associated filings concerning BorrowMoney's results of operations including revenue.

39.     Between July 2018 and in or about June 2020, Consulting Firm helped BorrowMoney assemble its financial statements and Forms 10-Q and 10-K filed with the Commission based upon information provided by BorrowMoney.  During that time, Piscitello reviewed, approved, and was responsible for how BorrowMoney's revenue was recorded.

40.     Piscitello knew BorrowMoney should not have recognized revenue in each of the FY 2019 Quarterly Reports because the majority of the revenue reported was fictitious and for the remainder, BorrowMoney did not have contracts or events that met the criteria for revenue recognition required by GAAP.

41.     BorrowMoney's purported customers, comprising approximately 75% of revenues reported in the first three quarters of FY 2019, did not know of, nor have business with, BorrowMoney.  Another purported BorrowMoney customer was not a BorrowMoney customer. Further, for the remainder of the revenues reported, there were no contracts, or other evidence indicating that any such contracts with customers existed, or events that met the criteria for revenue

recognition under GAAP.   Accordingly, BorrowMoney should not have recognized revenue in each of the FY 2019 quarterly reports.   Further, it was Piscitello himself who contributed to BorrowMoney's purported revenue.

42.     Piscitello knew the purported customers had not made the payments. Indeed, nearly 99% of the purported customer payments reported as receipt of revenue were not from customers but were instead from Piscitello.   To effectuate this scheme, beginning in November 2018, Piscitello transferred his personal funds to BorrowMoney's bank account to reflect payments that were reported in the FY 2019 quarterly reports. Piscitello made a total of 10 payments, each under $10,000, from his personal bank account and from elsewhere, comprised of three payments in the first quarter of 2019, four payments in the second quarter of 2019, and three payments in the third quarter of 2019.   Piscitello also made at least one payment in the fourth quarter of 2019 that was included in BorrowMoney's third quarter's reported revenue.

43.     Piscitello signed the FY 2019 10-Qs and the November 2019 8-K.

44.     The November 2019 8-K, was, and continues to be materially misleading. BorrowMoney falsely claimed that while sales of leads and other information products occurred and customers acquired the purchased information and services during the relevant period, BorrowMoney's payment processing system and procedures were deficient in collecting the sales proceeds and Piscitello instead made the payments on behalf of the customers.   BorrowMoney further claimed that the sales revenue should have been classified as accounts receivable, and Piscitello's payments, purportedly made on behalf of customers, should have been reflected as related party loans.

45.     Contrary to BorrowMoney's assertions in its November 2019 8-K, its improper revenue recognition was not due to misclassifications.   Instead, BorrowMoney should not have

recognized revenue in any of the FY 2019 Quarterly Reports because the majority of the revenue was fictitious and for the remainder of the revenues reported, there were no contracts or other evidence indicating that any such contracts with customers existed, nor were there events that met the criteria for revenue recognition under GAAP.  Given these factors, BorrowMoney should never have recognized revenue from lead generation.

46.     Further, Piscitello signed the Section 302 of the Sarbanes-Oxley Act of 2002 certifications, which were provided as exhibits to each FY 2019 quarterly filings attesting to the material accuracy and completeness of BorrowMoney's financial statements and other financial information included in the filings.

### D.  Defendants Misled Audit Firm #1

47.     BorrowMoney and Piscitello misled Audit Firm #1 during Audit Firm #1's FY 2019 quarterly reviews and attempted audit of BorrowMoney's FY 2019 financial statements. During Audit Firm #1's FY 2019 quarterly reviews of BorrowMoney's financial statements, Piscitello signed management representation letters to Audit Firm #1, confirming, among other things, BorrowMoney's financial statements conformed to GAAP, he had no knowledge of any fraud or suspected fraud affecting BorrowMoney involving management, (among others), there were no material transactions that had not been properly recorded in the accounting records, and related party transactions had been properly recorded or disclosed.

48.     During the FY 2019 quarterly reviews, BorrowMoney and Piscitello did not disclose to Consulting Firm or Audit Firm #1 that BorrowMoney's alleged revenue transactions were fraudulent and did not meet the criteria for revenue recognition and that nearly 99% of the accounts receivable were paid by Piscitello.  Further, for each quarterly review of FY 2019, Piscitello signed inaccurate client inquiry questionnaires to Audit Firm #1 stating BorrowMoney's

financial statements were prepared in accordance with GAAP and all related party transactions had been disclosed to Audit Firm #1 or in BorrowMoney's financial statements.

49.     BorrowMoney and Piscitello also misled Audit Firm #1 during Audit Firm #1's attempt to conduct BorrowMoney's FY 2019 audit.  As part of Audit Firm #1's revenue testing, Audit Firm #1 sent certain purported BorrowMoney customers confirmation requests, attaching BorrowMoney invoices marked "PAID," and asked these purported customers to confirm, among other things, that the balance of the customers' account payable to BorrowMoney on August 31, 2019 was $0, and the customers received all goods and/or services stated in invoices attached to the confirmations.  Piscitello provided Audit Firm #1 the purported customer contact information even though he knew the purported customers had not made the payments reflected on the invoices. Further the purported customers' response emails to Audit Firm #1 originated from an IP address in Fort Lauderdale, Florida that was associated with Piscitello, and BorrowMoney was listed as the registrant organization for the domain ownership associated with two of the purported customers' email addresses.  After receiving the signed confirmations, Audit Firm #1 attempted to contact the purported customers via telephone to validate the confirmations, but was unable to reach them.  Audit Firm #1's engagement partner then contacted Piscitello who disclosed to Audit Firm #1's engagement partner that he made the payments associated with the invoices.

50.     Piscitello also signed the confirmation request letters knowing at least three of the purported customers did not make the purchases reflected on the invoices.  These purported customers did not purchase leads or advertising as indicated by the invoices attached to the confirmation request letters or receive the relevant invoices from BorrowMoney or Piscitello.

51.     After receiving signed confirmation responses from BorrowMoney's purported customers via email or fax, Audit Firm #1 attempted to contact the customers via phone to validate

13

the confirmations but was unable to reach them.  It was not until Audit Firm #1's engagement partner contacted Piscitello about Audit Firm #1's inability to validate the confirmations, that Piscitello disclosed to Audit Firm #1 he made the payments associated with the invoices.  Audit Firm #1 then resigned as BorrowMoney's auditor on November 8, 2019.

52.     Moreover, on or about January 26, 2021, Auditor #2, resigned, internally referencing, amongst other reasons, management integrity and qualification of management.  Two other independent auditors have since also resigned.  At present, BorrowMoney does not have an independent auditor.

### E.  BorrowMoney Sold Stock and its Stock was Publicly Traded When its Financial Statements Were Misstated

53.     In September 2019, when BorrowMoney's FY 2019 quarterly reports continued to be misstated, BorrowMoney sold 10,000 shares of its common stock to an investor couple for $10,000 in a private sale.  Piscitello signed the associated share purchase agreement as president of BorrowMoney.  The couple paid BorrowMoney $1,000 of the $10,000 purchase price during September 2019, and thereafter paid another $5,000 in February 2020—this being after the misleading November 2019 8-K was released and never corrected.

54.     In addition, starting on October 29, 2019, BorrowMoney's common stock began to be publicly traded.  Between October 29, 2019 and November 7, 2019, before BorrowMoney filed the November 2019 8-K (which was itself misleading) disclosing the misstated FY 2019 filings, at least four investors traded in BorrowMoney's common stock.

55.     Further, in October 2021, after the November 2019 8-K was filed, BorrowMoney sold 20,000 shares of its common stock to an investor for $10,000 in a private sale.  Piscitello signed the associated subscription agreement as president of BorrowMoney.

56.     BorrowMoney's stock continued to be traded after the filing of the misleading November 2019 8-K, and continues to be traded.

**F.  Piscitello Failed to Comply with Beneficial Ownership Reporting Requirements**

57.     Piscitello failed to make required disclosures related to his beneficial ownership of BorrowMoney securities and changes therein.  BorrowMoney's registration of its common stock under Section 12(g) of the Exchange Act became effective on June 11, 2020, requiring Piscitello, a BorrowMoney officer and greater than 10% beneficial owner of BorrowMoney's outstanding shares, to disclose, on a Form 3 filed with the Commission, his beneficial ownership of approximately 20 million shares of BorrowMoney's common stock.  Piscitello never filed the required Form 3, or a Form 5, to report these holdings.

58.     Effective October 23, 2020, BorrowMoney's stock split, five-for-one, resulting in Piscitello then beneficially owning 100 million BorrowMoney shares.

59.     Piscitello failed to make required disclosures on Form 4 or Form 5 related to changes in his beneficial ownership of BorrowMoney's common stock.  Between August 2020 and February 2023, Piscitello failed to report on any filing with the Commission changes in his beneficial ownership of BorrowMoney's common stock as a result of 99 transactions in BorrowMoney's stock in brokerage accounts he either solely owned or owned jointly with Relative.  Between August 2020 and June 2022, Piscitello made profits of approximately $37,900 from sales of BorrowMoney's common stock.

60.     Piscitello failed to disclose his acquisition of the 3,319,527 shares of BorrowMoney stock through JTS88 on any filing with the Commission.  Specifically, Piscitello directed the transfer on or about June 28, 2022 of 2,319,527 shares of BorrowMoney stock out of his and Relative's jointly held brokerage account to a stock certificate in Relative's name.  Subsequently,

Piscitello signed a letter directing BorrowMoney's transfer agent to transfer the shares associated with the certificate to JTS88.  He also directed the transfer of another 1 million shares Relative held in book entry form in Relative's transfer agent account, to JTS88's transfer agent account. This complete transfer to JTS88 of the 3,319,527 shares took place on or about March 15, 2023. Piscitello had beneficial ownership of the BorrowMoney shares in JTS88's transfer agent account as he has always been an authorized signatory on all JTS88 bank accounts and the primary source of funds into and recipient of funds from those collective bank accounts.  Further, Piscitello signed JTS88 meeting minutes certifying that on July 29, 2022, JTS88 was member managed and he was a member.

61.    To date, Piscitello has not filed a Form 4 or 5.

62.    In addition, Piscitello failed to make required filings on Schedules 13D or 13G. Piscitello has been (and remains) a greater than 5% beneficial owner since BorrowMoney's registration, at all times owning at least 89.6% of BorrowMoney's common stock.  Further, on May 16, 2022, Piscitello acquired more than 2% of BorrowMoney's outstanding shares in a 12-month period when he received a transfer of BorrowMoney stock into the brokerage account he jointly owned with Relative from a brokerage account in Relative's name.  Despite his beneficial ownership and acquisition, Piscitello has never filed any required statements on Schedules 13D or 13G.

**G. BorrowMoney did not Report Piscitello's Failure to File Beneficial Ownership Filings**

63.    BorrowMoney did not report CEO Piscitello's complete failure to file Forms 3, 4, and 5 filings as required by Item 405 of Regulation S-K in its annual Forms 10-K during fiscal year ended 2020 through fiscal year ended 2023.

64.     Each BorrowMoney Form 10-K filed with the Commission simply disclosed Piscitello's ownership of 20 million shares, or 100 million after the stock split, of BorrowMoney's common stock, but did not disclose that Piscitello had failed to file the requisite Forms 3, 4 and/or 5.

## VI.
## CLAIMS FOR RELIEF

### COUNT I

**Violations of Section 17(a)(1) of the Securities Act**
**(as to Defendants)**

65.     The Commission adopts by reference paragraphs 1 through 4, 9 through 34, and 37 through 56 of this Complaint.

66.     From on or about January 9, 2019 through the present, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or recklessly, directly or indirectly employed devices, schemes, or artifices to defraud.

67.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### COUNT II

**Violations of Section 17(a)(2) of the Securities Act**
**(as to Defendants)**

68.     The Commission adopts by reference paragraphs 1 through 4, 9 through 34, and 37 through 56 of this Complaint.

69.     From on or about January 9, 2019 through the present, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in

interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

70.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT III

### Violations of Section 17(a)(3) of the Securities Act
### (as to Defendants)

71.     The Commission adopts by reference paragraphs 1 through 4, 9 through 34, and 37 through 56 of this Complaint.

72.     From on or about January 9, 2019 through the present, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

73.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT IV

### Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act
### (as to Defendants)

74.　　The Commission adopts by reference paragraphs 1 through 4, 9 through 34, and 37 through 56 of this Complaint.

75.　　From on or about January 9, 2019 through the present, Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of any security.

76.　　By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

## COUNT V

### Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act
### (as to Defendants)

77.　　The Commission adopts by reference paragraphs 1 through 4, 9 through 34, and 37 through 56 of this Complaint.

78.　　From on or about January 9, 2019 through the present, Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

79.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

## COUNT VI

### Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act
### (as to Defendants)

80.     The Commission adopts by reference paragraphs 1 through 4, 9 through 34, and 37 through 56 of this Complaint.

81.     From on or about January 9, 2019 through the present, Defendants, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

82.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)].

## COUNT VII

### Violations of Section 13(a) of the Exchange Act and Rule 13a-1 thereunder
### (As to BorrowMoney)

83.     The Commission adopts by reference paragraphs 1, 2, 5, 6 through 10, 12 through 28, 35, 36, and 57 through 64 of this Complaint.

84.     Defendant BorrowMoney, as an issuer of a security registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l], filed one or more annual reports with the Commission that were not factually accurate.  Item 405 of Regulation S-K under the Exchange Act requires a

reporting issuer to disclose annually any late filing and any "known" failure to file by the issuer's insiders.  A "known" failure to file includes, but is not limited to, a failure to file a Form 3, which is required of all insiders, and a failure to file a Form 5 in the absence of a written representation that no Form 5 is required, unless the issuer otherwise knows that no Form 5 is required.  A failure to provide disclosure required by Item 405 constitutes a violation of Exchange Act Section 13(a) [15 U.S.C. § 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1].

85.     BorrowMoney, with Piscitello as its CEO, failed to make required filings and omitted disclosure of those failures in its fiscal year ended 2020 through fiscal year ended 2023 Forms 10-K.

86.     By reason of the foregoing, BorrowMoney violated and, unless enjoined, is reasonably likely to continue to violate Exchange Act Section 13(a) [15 U.S.C. § 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1].

**COUNT VIII**

**Aiding and Abetting Violations of Section 13(a) of the Exchange Act
and Rule 13a-1 thereunder
(As to Piscitello)**

87.     The Commission adopts by reference paragraphs 1, 2, 5, 6 through 28, 35, 36, and 57 through 64 of this Complaint.

88.     As alleged above in Count VII, BorrowMoney violated Exchange Act Section 13(a) [15 U.S.C. § 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1].

89.     Piscitello knowingly or recklessly provided substantial assistance to BorrowMoney with respect to its violations of Exchange Act Section 13(a) [15 U.S.C. § 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1].

90.     By reason of the foregoing, Piscitello aided and abetted and, unless enjoined, is reasonably likely to continue to aid and abet BorrowMoney's violations of Exchange Act Section 13(a) [15 U.S.C. § 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1].

### COUNT IX

**Violations of Section 16(a) of the Exchange Act and Rule 16a-3 thereunder
(As to Piscitello)**

91.     The Commission adopts by reference paragraphs 1, 2, 5, 6 through 9, 11 through 28, 35, 36, and 57 through 64 of this Complaint.

92.     From on or about June 11, 2020 through the present, Piscitello, as the direct or indirect beneficial owner of more than ten percent of a class of equity securities (other than an exempted security) which was registered pursuant to Exchange Act 12 [15 U.S.C. § 78l] and/or as an officer or director of an issuer of such securities, failed to timely and accurately file Forms 3, 4 and/or 5 with the Commission containing the information required therein.

93.     By reason of the foregoing, Piscitello, violated and, unless enjoined, is reasonably likely to continue to violate, Exchange Act Section 16(a) [15 U.S.C. § 78p(a)] and Rule 16a-3 thereunder [17 C.F.R. § 240.16a-3].

### COUNT X

**Violations of Sections 13(d) and 13(g) of the Exchange Act and Rule 13d-1 thereunder
(As to Piscitello)**

94.     The Commission adopts by reference paragraphs 1, 2, 5, 6 through 9, 11 through 28, 35, 36, and 57 through 64 of this Complaint.

95.     Piscitello, who has been and remains, directly or indirectly, the beneficial owner of more than five percent of a class of equity securities registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l], since its effective registration beginning on June 11, 2020 through the present,

and having acquired more than two percent of BorrowMoney's outstanding shares in a 12-month period on May 16, 2022, failed to file with the Commission required schedules 13D or 13G within the time prescribed in Exchange Act Sections 13(d) and/or 13(g) [15 U.S.C. §§ 78m(d) and 78m(g)] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1].

96.     By reason of the foregoing, Piscitello has violated, and unless enjoined, is reasonably likely to continue to violate, Exchange Act Sections 13(d) and 13(g) [15 U.S.C. §§ 78m(d) and 78m(g)] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1].

## VII.
## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

## I.
## Permanent Injunction
### (As to Defendants)

Issue a Permanent Injunction enjoining Defendant BorrowMoney from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule l0b-5 thereunder [17 C.F.R. § 240.10b-5]; and Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1].

Issue a Permanent Injunction enjoining Defendant Piscitello from violating Sections 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule l0b-5 thereunder [17 C.F.R. § 240.10b-5]; Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)], and Rule 16a-3 thereunder [17 C.F.R. § 240.16a-3]; Sections 13(d) and 13(g) of the Exchange Act [15 U.S.C. §§ 78m(d) and 78m(g)], and Rule 13d-1 thereunder [17 C.F.R. §13d-1]; and from aiding and abetting BorrowMoney's violations of Sections 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1].

**II.**
**Disgorgement and Prejudgment Interest**
**(As to Defendants)**

Issue an Order directing Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in this Complaint.

**III.**
**Civil Penalty**
**(As to Defendants)**

Issue an Order directing Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

**IV.**
**Officer and Director Bar**
**(As to Piscitello)**

Issue an Order barring Piscitello, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from serving as an officer or director of any company that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

**V.**
**Penny Stock Bar**
**(As to Piscitello)**

Issue an Order permanently restraining Piscitello from participating in the offering of any penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase of any penny stock, under Securities Act Section 20(g) [15 U.S.C. § 77t(g)]  and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)].

**VI.**
**Further Relief**
**(As to Defendants)**

Grant such other and further relief as may be necessary and appropriate.

**VII.**
**Retention of Jurisdiction**
**(As to Defendants)**

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

**VIII.**
**Demand for Jury Trial**
**(As to Defendants)**

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

Dated:  June 26, 2024                    Respectfully submitted,

By:    _____
                Russell Koonin
                Senior Trial Counsel
                Fla. Bar No. 474479
                Direct Dial: (305) 982-6390
                Email: kooninr@sec.gov

25

Attorney for Plaintiff
**Securities and Exchange Commission**
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154